**United States District Court**
For the Northern District of California

1

2

3

4

5

6              IN THE UNITED STATES DISTRICT COURT

7

8          FOR THE NORTHERN DISTRICT OF CALIFORNIA

9    AMALIA GONZALEZ-AMEZCUA,

10              Plaintiff,                    No. C 07-03103 JSW

11        v.

12    MICHAEL J. ASTRUE,                      **ORDER GRANTING**
                                              **PLAINTIFF'S MOTION FOR**
13              Defendant.                    **SUMMARY JUDGMENT AND**
                                              **DENYING DEFENDANT'S**
14                                            **CROSS-MOTION FOR**
                                              **SUMMARY JUDGMENT**
15    _____/

16

17        Now before the Court is Plaintiff Amalia Gonzalez-Amezcua's ("Gonzalez") motion for

18   summary judgment and the cross-motion for summary judgment filed by the Commissioner of

19   the Social Security Administration ("Commissioner"). Pursuant to Civil Local Rule 16-5, the

20   motions have been submitted on the papers without oral argument. Having carefully reviewed

21   the administrative record and considered the parties' papers and the relevant legal authority, and

22   good cause appearing, the Court hereby GRANTS Gonzalez's motion for summary judgment

23   and DENIES the Commissioner's cross-motion for summary judgment.

                                    **BACKGROUND**

24        Gonzalez brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(g) to obtain

25   judicial review of a final decision of the Commissioner denying her request for Social Security

26   benefits. Gonzalez is a 42 year old woman, formerly employed as a customer service

27   representative, a data entry clerk, and a telephone order clerk. She claims she became disabled

28

United States District Court

For the Northern District of California

1  on August 1, 2000, due to bilateral carpal syndrome and other upper bilateral extremity

2  problems.

3        On April 17, 2001, one treating physician, Dr. Damore, diagnosed Gonzalez with

4  bilateral carpal tunnel syndrome and bilateral thoracic outlet syndrome.  On September 4, 2001,

5  Dr. Damore set limitations of lifting no more than 15 pounds and typing no more than 20

6  minutes per hour or five minutes consecutively.

7        On September 17, 2002, Dr. Damore reiterated his limitations set in September 2001,

8  and opined that Gonzalez could achieve substantial gainful employment.  (First Administrative

9  Record ("AR1") at 200-01.)  On October 18, 2002, the non-examining medical expert, Dr.

10  Newton, opined that Gonzalez could perform sedentary work with limitations on lifting and

11  constant typing.  (*Id.* at 219-226.)

12        On June 11, 2003, an MRI revealed mild disc protrusion in Gonzalez's lower back.  (*Id.*

13  at 230.)  On November 13, 2003, another treating physician, Dr. Banuelos, opined that

14  Gonzalez's limitations included lifting no more than five pounds and typing no more than 30

15  minutes consecutively.  (*Id.* at 285-291.)  He also stated that Gonzalez could sit/stand/walk for

16  only one hour at a time, and that she needed to lie down for three hours during an eight-hour

17  day.  (*Id.*)

18        On August 27, 2002, Gonzalez filed an application for disability benefits.  (*Id.* at 60-62.)

19  The Social Security Administration denied her application initially and again upon

20  reconsideration.  (*Id.* at 44, 49.)  Gonzalez appeared before an Administrative Law Judge

21  ("ALJ") at a hearing conducted on August 5, 2004.  (*Id.* at 311-348.)

22        A vocational expert ("VE") testified at the hearing.  (*Id.* at 333-348.)  The VE testified

23  that Gonzalez could not perform her past work but had developed transferable skills of

24  customer service work and record-keeping.  (*Id.* at 336.)  Based on Gonzalez's limitations and

25  skill set, the VE testified that two jobs were appropriate for Gonzalez:  security guard and

26  receptionist/information clerk.  (*Id.* at 337-38.)  Due to Gonzalez's limitations, however, the VE

27  reduced the available number of available jobs in each of these fields by two-thirds.  (*Id.*)  Even

28

2

United States District Court
For the Northern District of California

1   with the two-thirds reduction, the VE testified that 60,000 security jobs and 40,000

2   receptionist/information clerk jobs were available in California.  (*Id.*)

3          The ALJ found that although Gonzalez could not perform her past work, she could adapt

4   to other jobs that exist in significant numbers in the national economy and therefore she was not

5   considered disabled.  (*Id*. at 19-20.)  In making this finding, the ALJ relied in part on the VE's

6   testimony about the types of jobs Gonzalez could perform, found Gonzalez's testimony not to

7   be credible, and rejected the opinion of Dr. Banuelos.  (*Id*.)  The Social Security Administration

8   denied Gonzalez's request to review the ALJ's decision.  (*Id*. at 6.)

9          Gonzalez obtained judicial review of the final decision of the first denial of her request

10  for Social Security benefits.  This Court remanded the decision for further testimony regarding

11  two issues on March 22, 2006.  The first issue was whether the two positions proposed by the

12  VE - security guard and receptionist/information clerk - were in fact available to Gonzalez

13  considering the determination by the ALJ that she could only obtain "unskilled" positions.  The

14  second issue was whether the determination of Gonzalez's credibility could be supported by

15  specific findings and substantial evidence by the ALJ.

16         The second administrative hearing upon remand was held on September 26, 2006.

17  During this hearing, the ALJ heard testimony from Gonzalez and from a second VE, who had

18  not testified at the first hearing.  Gonzalez testified to many of the same conditions and ailments

19  that she testified to in her original hearing.  The VE testified at length about the required

20  abilities for both a security guard and receptionist/information clerk.  However, when

21  questioned by the ALJ regarding the skill level of the two positions, the VE stated only that

22  both positions were "un-skilled" without any further explanation or any further questioning by

23  the ALJ regarding the skill level of the positions.  (Second Administrative Record ("AR2") at

24  543.)

25         On November 22, 2006, the ALJ rendered his decision denying benefits.  In the

26  decision, the ALJ stated several reasons for his finding that Gonzalez's testimony regarding her

27  subjective pain level was not credible.  First, the ALJ found Gonzalez's "propensity to change

28  her testimony and subjective statements according to the perceived needs of the moment erodes

3

United States District Court

For the Northern District of California

1   the full credibility of the claimant's testimony and subjective statements concerning the

2   severity, duration, and limiting effects of her symptoms." (*Id.* at 366.)  Second, the ALJ found

3   that Gonzalez's "prescribed medication regimen is not consistent with the complaints of severe

4   persistent and debilitating pain." (*Id.* at 367.)  Third, the ALJ found that Gonzalez's testimony

5   was inconsistent between the two hearings regarding her inability to sit for prolonged periods of

6   time. (*Id.*)  Fourth, the ALJ found the different subjective complaints made to her doctors and

7   "in materials submitted in connection with her application for benefits . . . further erodes the . . .

8   claimant's credibility." (*Id.*)  In accordance with these credibility concerns, the ALJ determined

9   that the original determination of residual functional capacity was accurate.

10         As stated above, the ALJ made a determination that Gonzalez could only obtain

11  "unskilled" positions.  The proposed alternative occupational positions by the VE had a specific

12  vocational preparation ("SVP") time training intensity of 3 in the Dictionary of Occupational

13  Titles ("DOT"). (Br. Exs. A & B.)  An SVP of 3 corresponds with the "semi-skilled" work

14  level.[1]  However, the VE testified that both proposed positions were of the "unskilled" work

15  level. (AR2 at 540.)  The ALJ did not question the VE's classification or ask for an explanation

16  regarding the VE's proffered skill level for the proposed positions. (*Id.*)

17         In the ALJ's decision, he explained the discrepancy between the second VE's testimony

18  and the DOT regarding the skill level of the proposed positions by stating that "the discrepancy

19  in the sedentary security guard job cluster has greatly expanded since the DOT titles for security

20  guard were published." (*Id.* at 371.)  There was no evidence cited to support this conclusion.

21  With respect to the receptionist/information clerk, the ALJ made no findings regarding the skill

22  level required by the position.  Based on the ALJ's acceptance of the VE's skill level

23  classification for the proposed positions, the ALJ made a step-five determination that "other

24  work exists in significant numbers in the national economy" that Gonzalez could obtain. (AR2

25  at 371.)  On this basis, the ALJ denied benefits to Gonzalez.

26  _____

27      [1]      "The DOT lists a specific vocational preparation (SVP) time for each described occupation.
Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2;
semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT."
28  S.S.R. 00-4P. In other words, a higher SVP time corresponds to higher level positions that require increased
training time.

4

United States District Court

For the Northern District of California

1    In this action, Gonzalez seeks judicial review of the final decision of the Commissioner

2    of the Social Security Administration's finding that Gonzalez was "not disabled" and therefore

3    not entitled to benefits.

4                                              **ANALYSIS**

5    **A.    Standard of Review of Commissioner's Decision to Deny Social Security Benefits.**

6          A federal district court may not disturb the final decision of the Commissioner unless it

7    is based on legal error or the fact findings are not supported by substantial evidence.  42 U.S.C.

8    § 405(g); *Sprague v. Bowen*, 812 F.2d 1226, 1229 (9th Cir. 1987).  Considering the

9    administrative record as a whole, "[s]ubstantial evidence means more than a mere scintilla, but

10   less than a preponderance; it is such relevant evidence as a reasonable mind might accept as

11   adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  To

12   determine whether substantial evidence exists, courts must look to the record as a whole,

13   considering both evidence that supports and undermines the ALJ's findings.  *Desrosiers v.*

14   *Sec'y of Health and Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988).  An ALJ's decision must

15   be upheld, however, if the evidence is susceptible to more than one reasonable interpretation.

16   *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).

17   **B.    Legal Standard for Establishing a Prima Facie Case for Disability.**

18         The disability assessment by the Commissioner follows a five-step sequential evaluation

19   to determine whether a person is disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20

20   C.F.R. § 416.920.  The plaintiff has the burden of establishing a prima facie case for disability

21   in the first four steps of the evaluation.. *Gallant*, 753 F.2d at 1452.  However, the

22   Commissioner has the burden of proving the fifth step.  *Tackett v. Apfel*, 180 F.3d 1094, 1098

23   (9th Cir. 1999).

24         First, the claimant must not be working.  20 C.F.R. § 416.920(b).  Second, the

25   claimant's impairment must be "severe."  20 C.F.R. § 416.920(c).  Third, when the claimant has

26   an impairment that meets the duration required and is listed in Appendix 1 (a list of

27   impairments presumed severe enough to preclude work located in subpart P of part 404 of 20

28   C.F.R. § 416.920), or is equal to a listed impairment, benefits are awarded without considering

**United States District Court**

For the Northern District of California

1    the claimant's age, education, and work experience. 20 C.F.R. § 416.920(d). Fourth, if the

2    claimant's impairments do not meet or equal a listed impairment, the Commissioner assesses

3    the claimant's residual functional capacity to determine if the claimant can perform past work.

4    20 C.F.R. § 416.920(e). Benefits are denied if the claimant can do past work. *Id.* Fifth, if the

5    impairment prevents the claimant from doing past relevant work, the claimant's age, education,

6    work experience, and residual functional capacity are considered to see if the claimant is

7    capable of performing other work that exists in the national economy. 20 C.F.R. § 416.920(g).

8    The claimant is not entitled to benefits if the claimant can adjust to other work. *Id.*

9         In this matter, the ALJ used the five-step analysis to determine that (1) Gonzalez was

10   not working; (2) her mild carpal tunnel syndrome and mild back problem constituted "severe"

11   impairments; but (3) her impairments did not meet or medically equal the listings in Appendix

12   1, Subpart P, Regulations No. 4; (4) she was unable to perform her past work; but (5) she had

13   the residual functional capacity to perform a significant range of sedentary jobs that exist in

14   significant numbers in the national economy, namely a security guard or a

15   receptionist/information clerk. (AR2 at 364-72.) Accordingly, the ALJ concluded that

16   Gonzalez was "not disabled." (*Id.* at 372.)

17   **C.    The Conflict Between the Vocational Expert's Testimony and the Dictionary of
         Occupational Titles in the Step-Five Analysis.**

18

19   Gonzalez contests the step-five conclusion of the ALJ because the testimony of the VE

     and the DOT conflict in a manner that was not addressed by the ALJ.[2]

20

21        In making disability determinations, the Social Security Administration relies
          primarily on the [DOT] for 'information about the requirements of work in the
          national economy.' The Social Security Administration also uses testimony from

22        [VEs] to obtain occupational evidence. Although evidence provided by a vocational
          expert 'generally should be consistent' with the [DOT], 'neither the [DOT's] nor the

23        [VE's] . . . evidence automatically 'trumps' when there is a conflict.' Thus, the ALJ
          must first determine whether a conflict exists.

24

25

26   _____

27        [2]    Gonzalez also argues Dr. Damore's residual functional capacity assessment should have been
     considered in the second administrative hearing. Additionally, Gonzalez argues the ALJ's credibility finding
     regarding her testimony is not supported by substantial evidence and is not consistent with the relevant

28   standards. The Court does not address Gonzalez's remaining two arguments because the Court's analysis of the
     first argument forecloses the need to address the remaining arguments asserted by Gonzalez.

United States District Court
For the Northern District of California

1   *Masschi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007) (quoting S.S.R. 00-4P).  An ALJ may

2   not rely on the opinion of a VE's "testimony regarding the requirements of a particular job

3   without first inquiring whether the testimony conflicts with the [DOT]." *Id.* at 1153.  "When a

4   [VE] . . . provides evidence about the requirement of a job or occupation, the adjudicator has *an*

5   *affirmative responsibility* to ask about any possible conflict between that [VE's] . . . evidence

6   and information provided in the [DOT]." *Id.* at 1152 (quoting S.S.R. 00-4P) (emphasis in

7   original).  To satisfy this responsibility, the ALJ "'*will ask*' the [VE] 'if the evidence he or she

8   has provided' is consistent with the [DOT] and obtain a reasonable explanation for any apparent

9   conflict." *Id.* at 1152-53 (quoting S.S.R. 00-4P) (emphasis in original).

10          The ALJ in this action did neither.  First, the ALJ did not determine whether the VE's

11   testimony that the positions of security guard and receptionist/information clerk were

12   "unskilled" positions was consistent with the DOT.  In fact, the occupational positions proposed

13   by the VE for Gonzalez are categorized as "semi-skilled" in the DOT.  (Br. Exs. A & B.)

14   Second, the ALJ did not determine if there was a reasonable explanation for the conflict.  (AR2

15   at 543.); *contra Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995) (upholding the ALJ's

16   determination because there was significant testimony regarding how the specific job categories

17   matched the "specific abilities and limitations of the claimant").  As a result, this Court cannot

18   accept the ALJ's decision relying on the VE's testimony that the positions of security guard and

19   receptionist/information clerk are positions Gonzalez can obtain in the national economy.

20   Therefore, there is no "substantial evidence support[ing] the ALJ's step-five finding" that

21   Gonzalez could adjust to other work.  *See Masschi*, 486 F.3d at 1154.

22   **D.      The Lack of Evidence to Support the Step-Five Finding Warrants a Remand for**
         **the Determination and Award of Benefits.**

23

24          The remedy for an error in the step-five finding is to remand for further factual findings

25   or to remand for benefits.  The Court has "discretion to remand a case either for additional

    evidence and findings or to award benefits." *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir.

26

27   1989).  The Court may direct "an award of benefits where the record has been fully developed

    and where further administrative proceedings would serve no useful purpose." *Id*.  "Such a

28

    remand for benefits is indicated particularly where a claimant has already experienced lengthy,

7

United States District Court
For the Northern District of California

1   burdensome litigation." *Vertigan v. Halter*, 260 F.3d 1044, 1053 (9th Cir. 2001) (citing *Terry v.*

2   *Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990) (remanding for benefits where the claimant had

3   applied almost four years prior)). Furthermore, "[d]elaying the payment of benefits by

4   requiring multiple administrative proceedings that are duplicative and unnecessary only serves

5   to cause the applicant further damage - financial, medical, and emotional. Such damage can

6   never be remedied." *Varney v. Sec'y of Health and Human Servs.*, 859 F.2d 1396, 1399 (9th

7   Cir. 1988). There is no useful purpose in remanding this action for more factual findings when

8   the case has already been remanded for this purpose. Additionally, Gonzalez has already

9   waited six years for her disability determination, and additional proceedings would only delay

10  her receipt of benefits. *See Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996) (holding the

11  claimant "already waited over seven years for her disability determination, and additional

12  proceedings would only delay her receipt of benefits.").

13          In such instances of delay and hardship, there is a three-part test utilized to determine

14  whether the discretionary remand for award of benefits is warranted:

15          In the past, we have credited evidence and remanded for an award of benefits where
            (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence,
16          (2) there are no outstanding issues that must be resolved before a determination of
            disability can be made, and (3) it is clear from the record that the ALJ would be
17          required to find the claimant disabled were such evidence credited.

18  *Id.* (citations omitted). If this test is satisfied, "then remand for determination and payment of

19  benefits is warranted regardless of whether the ALJ *might* have articulated a justification" for

20  denial of benefits if the action was remanded for further proceedings. *Harman v. Apfel*, 211

21  F.3d 1172, 1179 (9th Cir. 2000) (emphasis in original).

22          In this case, the ALJ's reasons for crediting and accepting the VE's testimony and

23  rejecting the DOT in the step-five analysis was not sufficient. The ALJ's rejection of the

24  standard DOT definitions of security guard and receptionist/information clerk lacks support in

25  the Administrative Record. The ALJ had the burden of establishing the validity of the VE's

26  opinion by eliciting testimony to support the VE's classification. The ALJ failed to do so at

27  both the first hearing and the hearing upon remand. Because the ALJ had two opportunities to

28  elicit the VE's testimony, the rejected evidence of the DOT classification must be accepted as

8

United States District Court

For the Northern District of California

1    true. *See Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1988) (accepting the rejected opinion as

2    true, and ordering the payment of benefits, when there was not substantial evidence to support

3    the finding because the ALJ did not meet its burden of proof by providing specific reasons for

4    disbelieving the treating physician); *see also Sprague*, 812 F.2d at 1230-32 (reversing the

5    decision to deny benefits, in part, because "there are no specific reasons given for disregarding"

6    testimony contrary to the evidence relied on by the ALJ).

7         There is no evidence to support the rejection of the DOT standards.  In accordance with

8    the second requirement for an award of benefits, there are no outstanding issues to be resolved

9    before a determination of "disabled" can be made.  In *Vertigan v. Halter*, 260 F.3d 1044, 1053

10   (9th Cir. 2001), the district court awarded benefits without further administrative proceedings

11   when the claimant's "claim of disability ha[d] been developed by an evidentiary hearing and

12   numerous medical reports."  Here, Gonzalez's claim for disability has been developed by two

13   evidentiary hearings and numerous medical reports.  *See, e.g., id.* (remanding for an award of

14   benefits when there had only been a single evidentiary hearing, in addition to numerous medical

15   reports).  Therefore, examining the record as a whole, this Court finds there are no outstanding

16   issues that must be resolved before a proper disability determination can be made.

17        The third part of the test for a discretionary award of benefits is also satisfied.  A

18   discretionary award of benefits is warranted when it is clear from the record that the ALJ would

19   be required to find the claimant disabled if the evidence not credited by the ALJ were

20   considered.  *See Smolen*, 80 F.3d at 1292.  If the DOT classification is credited, the fifth step in

21   the ALJ's analysis would change, and Gonzalez would be considered "disabled."  Of the two

22   proposed skill levels for the positions proposed by the VE, the Court must accept the DOT's

23   description of "semi-skilled" because there is no evidence to support the VE's testimony

24   regarding the skill level of the two positions.  By accepting this definition, there is no available

25   work in the national economy proposed by the VE that is appropriate for Gonzalez and she must

26   therefore be considered "disabled."  Thus, by crediting the evidence of the DOT, and not

27   crediting the incomplete testimony of the VE, the third requirement of the test for granting an

28   award of benefits is satisfied.

9

**CONCLUSION**

For the foregoing reasons, the Court hereby GRANTS Gonzalez's motion for summary judgment, DENIES the Commissioner's cross-motion for summary judgment and REMANDS FOR AWARD OF BENEFITS.  Further proceedings shall be limited to the award of benefits.


**IT IS SO ORDERED.**

Dated: April 24, 2008

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

10